**A.C.E. CONSTRUCTION INC., Pacific Cascade Corporation, Joseph C. Lane, Frances Lane, Pacific Bank Mortgage Company, Alaska National Bank, J. C. Penney, and Lincoln National Life Insurance Company, Appellants and Cross-Appellees,**

v.

**CHENA CONSTRUCTION CORPORATION, Appellee and Cross-Appellant.**

**Nos. 5664, 5682.**

Supreme Court of Alaska.

July 9, 1982.

John A. Treptow, Phyllis C. Johnson and F. Ross Boundy, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellants and cross-appellees.

J. John Franich, Jr. and Mary A. Nordale, Law Offices of Mary A. Nordale, Fairbanks, for appellee and cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS, and COMPTON, JJ.

## OPINION

PER CURIAM.

This case arises under a construction contract. Appellants will be referred to collectively as "Pacific Cascade" and appellee will be referred to as "Chena". Chena was a subcontractor on the project in question.

Ultimately, after a trial to the court, judgment was entered in favor of Chena, for the subcontract price. Pacific Cascade does not challenge the propriety of awarding to Chena the subcontract price. But it has appealed as to two discrete issues. These are: (1) whether Chena had corporate capacity to sue under AS 10.05.720, which requires that a corporation, in order to commence or maintain an action, must allege and prove that it has paid its annual corporation tax and has filed its annual report in a timely manner, and (2) whether Pacific Cascade was entitled to an offset for the cost of extending sewer and water lines to the construction site.

On cross-appeal, Chena urges that the trial court should have granted Chena's motion to re-open the case so that Chena could show compliance with AS 10.05.720.[1]

## I.

In March, 1980, AS 10.05.720 read as follows:

"No domestic or foreign corporation may commence or maintain a suit, action or proceeding in a court in the state without alleging and proving that it has paid its annual corporation tax last due and has filed its annual report for the last calendar or fiscal year for which the report became due. A certificate of the payment of the annual tax and filing of the annual report is prima facie evidence of the payment of the tax and the filing of the annual report. The commissioner shall issue the certificate or a duplicate for a fee of 25 cents."

Chena alleged in its initial and subsequent complaints that it had paid its taxes and filed its annual reports when due. Pacific Cascade denied this allegation for lack of information or knowledge. At the close of Chena's evidence at trial, Pacific Cascade moved for a directed verdict because Chena had failed to prove compliance with AS 10.05.720. Chena was then allowed to re-open its case to show compliance with the statute.

Charles P. Rees, Chena's president, testified that on about January 30, 1980, he had made out the annual report for 1979 and had sent it, together with a check for the corporation tax due for 1980, to the Department of Commerce and Economic Development in Juneau. Copies of those documents were placed in evidence. Rees testified that he had no knowledge previous to the trial of whether the Department had ever received these documents. He also offered to re-execute the documents and send them again to the Department.

The superior court ruled that Chena had made a good faith effort to comply with the statute, and that Chena was competent to maintain this civil action.

---

1. Chena made two motions to re-open the case. The first motion was granted, allowing Chena to submit evidence of compliance with AS 10.05.720. When Chena later received a certificate stating that it had complied with AS 10.05.720, it made its second motion to re-open the case. The trial court denied this motion. Chena appeals the trial court's denial of its second motion.

During Chena's rebuttal case Rees testified that a re-executed annual report and an appropriate check had been sent to a law firm in Juneau, Alaska, on March 25, 1980, with instructions to deliver them to the Department.

After trial but before judgment was entered, Chena moved to supplement the record to include a certificate of compliance from the Department. The certificate, which was submitted with the motion, showed that Chena was in compliance with AS 10.05.720 as of February 1, 1980. The court denied Chena's motion.

Pacific Cascade asserts on appeal that a mere good faith effort to comply with the statute does not amount to compliance, because the statute requires proof that the corporation actually *has* paid the tax and *has* filed its report. Pacific Cascade also urges that the statute, being clear, should be applied strictly. Pacific Cascade, with commendable candor, recognizes that the court could have granted a continuance or reserved ruling on the motion to dismiss until the close of all the evidence, thus allowing Chena an opportunity to comply with the statute [2] but it argues that it is not permissible to do what the court did here in holding that Chena's good faith attempts to comply were tantamount to full compliance with the statute.

Chena answers by arguing that production of a certificate of compliance, mentioned in AS 10.05.720, is not the exclusive means of proving compliance. Chena urges that a corporation can, as it did here, adduce other forms of evidence to show that the tax has been paid and the report has been filed. At this point, the argument develops into two branches. First, Chena argues that it made out a prima facie case of compliance which was unrebutted by appellant. Second, it argues that it proved actual compliance by showing that the report and a check for the tax were placed in the mail. It is beyond the ability of a corporation, says Chena, to police the United States Post Office or an Alaska government agency. Therefore, proof of mailing should be sufficient to show compliance, and it is not in all cases necessary to produce the certificate of compliance.

■ In our opinion, the superior court should have granted Chena's motion to re-open the case to permit the filing of the certificate of compliance. To have granted the motion would not have required any additional testimony. The certificate was self-authenticating under Alaska Rule of Evidence 902(1). It demonstrated beyond peradventure that Chena had complied with AS 10.05.720 as of February 1, 1980. Its admission into evidence would have eliminated one of the main questions presented in this appeal: whether the showing of a good faith effort to comply is the equivalent of showing actual compliance with that statute.

In the circumstances of this case we hold that it was an abuse of discretion and, therefore, error not to grant Chena's motion. We deem the record on appeal to be augmented by the certificate and, on that basis, we hold that Chena was in compliance with AS 10.05.720.[3]

In view of our holding it is not necessary to consider whether Chena made a prima facie showing of compliance, or whether Pacific Cascade waived the defense of corporate capacity by failing to raise it before trial.

---

**2.** The permissibility of this procedure is recognized in the case law of other jurisdictions with similar statutory requirements. *See, e.g., Mather Construction Company v. United States,* 475 F.2d 1152, 1155 (Ct.Cl.1973); *American Land Development Corp. v. Hillman,* 138 So.2d 756, 758 (Fla.App.1962); *Michigan Rural Development, Inc. v. El Mac Hills Resort, Inc.,* 34 Mich.App. 505, 191 N.W.2d 733, 734–35 (Mich.App.1971).

**3.** *See* Appellate Rule 210(h).

Pacific Cascade argues that the certificate was contradictory to what the evidence established at trial. To the extent that Pacific Cascade contends either that the certificate is not genuine or that Chena had not complied with the statute by the time that it made its motion to re-open, Pacific Cascade should address those questions to the superior court after the mandate has issued in this case.

## II.

Pacific Cascade argues that Chena committed negligent misrepresentation as to the availability of water and sewer lines to the construction project, in a letter sent from the president of Chena to Pacific Cascade on March 24, 1976. The superior court rendered findings against Pacific Cascade on this question. The letter in question did not refer to any specific site at which water and sewer lines were available, but merely referred to "the proposed location." The superior court found that "it could have easily referred to Burgess Industrial Park," *i.e.*, to the general area in which the project was to be constructed.

We have reviewed the evidence which bears upon the superior court's findings. We will not discuss that evidence at length, for we are satisfied that the court's findings as to negligent misrepresentation were not clearly erroneous under Civil Rule 52(a). Therefore, the judgment must be affirmed in its entirety.

AFFIRMED.