42 P.3d 1093 (2002)
H.C.S., Appellant,
v.
COMMUNITY ADVOCACY PROJECT OF ALASKA, INC., as Guardian and Conservator of H.L.S., Appellee.
No. S-9783.
Supreme Court of Alaska.
March 8, 2002.
*1094 Edward R. Niewohner, Niewohner & Associates, P.C., Fairbanks, for Appellant.
Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION
EASTAUGH, Justice.

I. INTRODUCTION
Without objection from the family, the superior court appointed a corporation to be the guardian and conservator of H.L.S., an adult. Six months later, one of the ward's adult sons, H.C.S., asked the court to remove the corporation and appoint him guardian and conservator. Because H.C.S. demonstrated that circumstances had changed since the corporation's uncontested appointment, we vacate the order denying H.C.S.'s modification petition and remand for a determination whether it would be in H.L.S.'s best interests to remove CAPA and appoint H.C.S. guardian and conservator. In making this determination the court should consider the substantive values underlying the statutory priorities for appointments of guardians and conservators.

II. FACTS AND PROCEEDINGS
H.L.S. was born in 1924; his family has lived in Fairbanks for more than fifty years and he has an extended family there. Alzheimer's Disease and dementia caused H.L.S. to suffer lapses in memory and judgment. In April 1999 his children petitioned the superior court to appoint a guardian and conservator for him. The court visitor, Alison Seymour, reported that H.L.S. had previously *1095 expressed a preference that if he should need help, it be provided by one of his sons, H.C.S. His examining physician reported that H.L.S. had indicated that he was most comfortable with having H.C.S. in charge of his financial affairs. In July the court appointed H.L.S.'s adult sons T.B. and H.C.S. co-guardians; T.B. was the primary guardian and H.C.S. was the secondary guardian. The court also ordered the ward's family to nominate a conservator. When the family was unable to do so, the court appointed Community Advocacy Project of Alaska, Inc. (CAPA) H.L.S.'s conservator.
In early October 1999 the court visitor informed the superior court that Adult Protective Services, CAPA, and the Fairbanks Police Department had reported concerns to her about the ward. The court visitor told the court that he was wandering the Fair-banks streets improperly dressed for cold weather and that his apartment had a sewage leak. She thought that "lack of follow through" by the guardian regarding housing and finances was causing "personal danger" to H.L.S. and danger of "further waste or dissipation of his finances and assets." She asked the superior court to schedule a hearing to consider appointing CAPA guardian in place of T.B. and H.C.S.
The superior court conducted a hearing on October 8 and heard from the court visitor, the ward himself, and family members, including T.B. and H.C.S.; it then appointed CAPA H.L.S.'s guardian without objection.
The ward's ex-wife, Ms. H.S., wrote the superior court a short letter several weeks later asking the court to remove CAPA and appoint her H.L.S.'s guardian. The court conducted a hearing on her request on November 29; attending were Ms. H.S., the ward's attorney (Robert Noreen), the court visitor, and Candy Carroll of CAPA. The court visitor suggested that Ms. H.S. might have a conflict of interest because she claimed to have an interest in a building H.L.S. owned. H.L.S.'s attorney asked that Ms. H.S.'s request be denied. The court found that it was not then in H.L.S.'s best interest to change guardians and denied Ms. H.S.'s request.
In March 2000 H.C.S., through counsel, filed a petition asking the superior court to "modify" and "terminate" the appointment of CAPA and to appoint him as H.L.S.'s guardian and conservator. H.C.S. alleged that CAPA had caused H.L.S. to be institutionalized in Sitka, rather than Fairbanks or Anchorage, "thus prohibiting or inhibiting family visits and emotional support." H.C.S. further alleged that CAPA "drilled and opened [H.C.S.]'s safety deposit box rather than [H.L.S.]'s and ... otherwise assumed control of other family members' possessions." In late March CAPA asked for permission to file a bankruptcy petition for H.L.S. The superior court initially approved CAPA's request to file a bankruptcy petition but rescinded its approval when H.C.S. sought reconsideration on the ground the petition to remove CAPA was pending.
At a May 12, 2000 closed hearing on H.C.S.'s petition to replace CAPA, the superior court heard from CAPA's Candy Carroll, the court visitor, H.L.S.'s attorney, H.C.S.'s attorney, and H.C.S. himself. The arguments and comments informed the court of the continued need for a guardian and conservator to protect H.L.S. and his assets; the court also heard of disputes concerning the extent of H.L.S.'s assets, the desirability of filing for bankruptcy, the family's willingness and ability to care for H.L.S., the extent to which CAPA's conduct had disrupted the family by moving H.L.S. from Fairbanks to Sitka three days before Thanksgiving 1999, and the expense of CAPA's services.
The court denied H.C.S.'s petition on May 22. It found that "`CAPA' has been proceeding in good faith to protect both [H.L.S.] personally and his assets. It is currently in [H.L.S.]'s best interest that CAPA continue in its role and continue its efforts to provide [H.L.S.] with long-term care." H.C.S. unsuccessfully moved for reconsideration. He now appeals.

III. DISCUSSION
H.C.S. argues that it was an abuse of discretion to deny his petition to change his father's guardianship and conservatorship to himself without making fact findings to justify deviating from statutory priorities favoring *1096 his appointment. Relying on AS 13.26.145 and AS 13.26.210, he argues that the court should have removed CAPA, an "institutional stranger," and appointed himself, absent findings that he would be unfit as a guardian and conservator.

A. Standard of Review
The initial selection of a guardian or conservator for an incapacitated person is committed to the sound discretion of the superior court.[1] We review that decision for abuse of discretion.[2] Although the issue has not previously come before us, we think it appropriate to review an order denying or granting a request to remove a guardian or conservator under the same deferential standard.[3] The superior court abuses its discretion if it considers improper factors, fails to consider statutorily mandated factors, or assigns too much weight to some factors.[4] We review the interpretation of a statute de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

B. Appointing Guardians and Conservators
The legislature has specified selection priorities for persons seeking to be appointed guardians or conservators. Alaska Statute 13.26.145(d) establishes the priorities for qualified persons seeking appointment as guardians:
[Q]ualified persons have priority for appointment as guardian in the following order:
(1) a person, association, or private nonprofit corporation nominated by the incapacitated person, if at the time of the nomination the incapacitated person had the capacity to make a reasonably intelligent choice;
(2) the spouse of the incapacitated person;
(3) an adult child or parent of the incapacitated person;
(4) a relative of the incapacitated person with whom the incapacitated person has resided for more than six months during the year before the filing of the petition;
(5) a relative or friend who has demonstrated a sincere, longstanding interest in the welfare of the incapacitated person;
(6) a private association or nonprofit corporation with a guardianship program for incapacitated persons;
(7) the public guardian.
Likewise, AS 13.26.210(a) establishes the priorities for qualified persons seeking appointment as conservators:
The following are entitled to consideration for appointment in the order listed:
(1) a conservator, guardian of property, or other like fiduciary appointed or recognized by the appropriate court of any other jurisdiction in which the protected person resides;
(2) an individual or corporation nominated by the protected person if the protected person is 14 or more years of age and has, in the opinion of the court, sufficient mental capacity to make an intelligent choice;
(3) the spouse of the protected person;
(4) an adult child of the protected person;
(5) a parent of the protected person, or a person nominated by the will of a deceased parent;
(6) any relative of the protected person with whom the protected person has resided for more than six months before the filing of the petition;

*1097 (7) a person nominated by the person who is caring for or paying benefits to the protected person.
The legislature anticipated justifiable deviation from these priorities. As to guardians, the legislature adopted AS 13.26.145(e). It provides that the "priorities established in (d) of this section are not binding, and the court shall select the person, association, or nonprofit corporation that is best qualified and willing to serve." (Emphasis added.) As to conservators, the legislature adopted AS 13.26.210(b). It states that the "court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." (Emphasis added.)
Both appointment statutes express equivalent preferences. Both prefer persons nominated by the protected party to other persons. Both generally prefer close family members to distant family members, and family members to non-family members. The least favored applicants are those persons or entities most distant from the ward. Both statutes give the appointing court discretion to override the statutory preferences. Notwithstanding the priorities, the court must select the "best qualified" guardianship applicant willing to serve.[6] And it may deviate from the statutory priorities for "good cause" in selecting a conservator.[7]
The Alaska Probate Rules specify some procedures governing guardianships and conservatorships. Of particular interest to selection are Probate Rules 16(a) and 17(a). The former provides that a petition for guardianship "must state the priority of the nominee under AS 13.26.145 and, if known, the names and addresses of any person with a higher priority."[8] The latter provides that a petition for conservatorship "must state the priority of the nominee under AS 13.26.210 and, if known, the names and addresses of any person with a higher priority."[9] These provisions help advance the statutory appointment priorities.
The court initially selected CAPA as H.L.S.'s conservator with the family's consent and substituted CAPA for T.B. and H.C.S. as H.L.S.'s guardians, again without objection by the family. Because CAPA's appointments were uncontested, the superior court had no reason then to determine whether deviating from the statutory priorities was justified. It therefore had no reason to determine whether CAPA was "best qualified" to serve as guardian[10]i.e., better qualified than an applicant of higher priorityor whether there was "good cause" to appoint CAPA conservator over another applicant with higher priority.[11] H.C.S. does not claim that the superior court abused its discretion in initially appointing CAPA guardian and conservator.

C. Modifying Appointments of Guardians or Conservators
The legislature adopted statutes that discuss removal of guardians and conservators.[12] These removal statutes do not purport to be exhaustive or comprehensive in describing the grounds for removal or the *1098 procedure to be followed when removal is sought.[13]
Thus, AS 13.26.125 appears to deal with only some of the specific circumstances that might warrant removing a guardian and appointing a successor. This section does not contain a generally applicable substantive removal standard such as "good cause." Alaska Statute 13.26.125(a) provides that a court may remove a guardian and appoint a successor if it determines that a "less restrictive guardianship plan ... would assist the ward in meeting essential requirements for physical health and safety."[14] This subsection is inapplicable here, because H.C.S. is not proposing a less restrictive plan. Alaska Statute 13.26.125(e) addresses other specific reasons for removal, but they are equally inapplicable, because H.C.S. is not claiming that CAPA placed H.L.S.'s safety in "imminent danger." Likewise, subsections .125(b) and (d) do not apply here because H.C.S. did not claim that H.L.S. is no longer incapacitated or had expressed a desire for a change in guardianship.[15]
Because other circumstances that might justify a guardian's removal in a given case can be readily imagined, it is unlikely the legislature intended AS 13.26.125 to prescribe the exclusive grounds for removal.
Alaska Statute 13.26.235 provides simply that conservators may be removed "for good cause."[16] It does not elaborate further, and unlike section .125, does not list specific grounds for removal.
We conclude that the two removal statutes did not prevent the superior court from removing and replacing CAPA as guardian and conservator.

*1099 1. A two-part analysis should apply to petitions to remove or replace guardians or conservators.
Neither section .125 nor section .235 specifies any procedure for seeking removal. Nor do the Alaska Probate Rules.[17]
We recognize the potential for disputes over appointing guardians and conservators and efforts to remove them. Litigation over such matters can be contentious and can disrupt family relationships already strained by the ward's circumstances. Extended or repeated litigation over removal is costly both emotionally and financially. We are reluctant to encourage serial disputes should applicants with successively higher priority under the appointment statutes petition to replace existing guardians and conservators. But we also recognize that families may have difficulty in dealing with a family member's incapacity, and that persons with statutory priority may not initially be able or willing to take on the responsibilities of guardian or conservator. In such cases, it may be essential to appoint a professional. That initial appointment should not altogether foreclose qualified family members from later asking the court to appoint them in place of the professional.
The procedure for modifying child custody awards provides a useful analytical model. Child custody is awarded in accordance with the child's "best interests."[18] Likewise, guardians for incapacitated persons are appointed to "promote and protect the well-being of the person."[19] Conservators are appointed for the protection of those who, through incapacity, cannot manage their property and affairs effectively.[20] The legislature has adopted a two-part test for modifying child custody awards. Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child ... may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." Thus, the non-custodial parent must first demonstrate that circumstances have changed significantly since entry of the prior custody order.[21] Requiring this threshold showing of changed circumstances has the purpose of "`discourag[ing] discontented parents from continually renewing custody proceedings.[22]
We think an equivalent requirement of changed circumstances is desirable when there is a dispute about changing a guardian or conservator, to minimize repeated guardianship or conservatorship contests. Therefore, in seeking a contested change of the guardian or conservator, a petitioner must first show that the circumstances of the ward, guardian, or conservator have changed materially since the guardian or conservator was appointed.[23]
Once the petitioner demonstrates changed circumstances, the court must decide whether the existing appointment is in the ward's best interests. This best interests determination will require the court to take into account the closeness of the ward's relationships to the existing and prospective guardians and conservators. This inquiry gives weight to the substantive values that apparently underlie the statutory priorities for appointing guardians and conservators.[24]
*1100 The length and quality of existing appointments will often also be relevant to the best interests determination. While the material circumstances in any given dispute will be case-specific, disrupting the ward's relationship with the existing guardian or conservator may raise concerns about continuity and stability analogous to equivalent concerns in the child custody context.[25] Likewise, if a change would likely affect the ward's physical placement, the extent to which the ward has formed relationships with caregivers or others in the ward's present living arrangement may be relevant. Other circumstances may also be relevant in particular cases.

2. H.C.S.'s petition
H.C.S. petitioned for removal of CAPA as guardian and conservator and sought his own appointment. We conclude that he demonstrated changed circumstances as a matter of law.
H.C.S.'s petition and oral presentation alleged that CAPA's abrupt relocation of his father from Fairbanks to Sitka three days before Thanksgiving 1999 effectively cut off personal contact with his father's extended family in Fairbanks and other African-Americans generally.[26] This allegation might have permitted an inference that H.C.S. would have either avoided such a move, minimized its impact, or made quicker efforts than CAPA to resettle his father in Fairbanks (or Anchorage, where H.C.S. lives).
H.C.S. also alleged that CAPA's services are draining H.L.S.'s modest estate, which was alleged to be on the edge of bankruptcy when this appeal was commenced. H.C.S., in contrast, claimed he would not charge the estate to perform the same services.
We acknowledge that at least some of these assertions were in dispute. For example, had it reached the issue, the court might have found that, based on information offered at the May 12, 2000 hearing, H.C.S. could not have achieved a better placement than CAPA. But taken as a whole, H.C.S.'s allegations demonstrated a significant change of circumstances, and therefore entitled H.C.S. to an evidentiary hearing and a determination whether CAPA should remain the guardian and conservator.
Moreover, H.C.S. is a statutorily preferred applicant who has significantly higher priority than CAPA under both appointment statutes. He correctly argues that, as his father's adult child, he has priority over CAPA under AS 13.26.145(d)(3) and AS 13.26.210(a)(4).[27] And before CAPA was appointed guardian and conservator, his father had expressed a preference to the court visitor and his physician that H.C.S. take care of him if needed and that H.C.S. manage his affairs. H.L.S.'s preference, if still valid, would also give H.C.S. priority under AS 13.26.145(d)(1) and AS 13.26.210(a)(2). Notwithstanding his priority, H.C.S. did not oppose CAPA's appointments, and CAPA's appointments were uncontested. H.C.S.'s present willingness to serve is a change in circumstances since the time CAPA was appointed without contest. This creates a dispute that did not exist when CAPA was appointed. The superior court was never previously asked to give effect to the statutory appointment priorities or decide whether to deviate from them.[28]
Because H.C.S. demonstrated a material change of circumstances, it was necessary to consider whether it was in the ward's best *1101 interests to remove CAPA and replace it with H.C.S.
The superior court promptly conducted a hearing at which all interested parties or persons were heard, although no formal testimony was offered.[29] We agree with H.C.S.'s argument on appeal that the hearing failed to address several unresolved factual disputes about CAPA's treatment of H.L.S. and his assets.
The order denying H.C.S.'s petition found that CAPA has been "proceeding in good faith to protect both [H.L.S.] personally and his assets. It is currently in [H.L.S.]'s best interests that CAPA continue in its role and continue its efforts to provide [H.L.S.] with long-term care." We think these findings are insufficient to resolve the best interests inquiry.
First, the finding of CAPA's good faith is of little relevance here. We assume that a corporate professional guardian and conservator would be altogether disqualified if it were not acting in good faith toward the ward; this factor has little bearing on the ward's best interests or the statutory priorities. And the essence of H.C.S.'s petition was not that CAPA was acting in bad faith, but that CAPA was not caring for his father appropriately or efficiently.
Second, the finding that it was in the ward's "best interests" that CAPA continue as his guardian and conservator is conclusory and does not allow meaningful review in light of H.C.S.'s specific allegations. It was certainly arguable from the information heard by the superior court at the May 12, 2000 hearing and at earlier hearings that CAPA was a better choice than H.C.S. But no findings discussed the relative capabilities of CAPA and H.C.S. to care for H.L.S. and be his guardian. No findings found that CAPA's capabilities sufficiently outweighed H.C.S.'s so as to justify the court's departure from the statutory preferences set out in AS 13.26.145. Likewise, no findings discussed their relative abilities to manage H.L.S.'s assets efficiently. Based on the arguments made at the May 12, 2000 hearing, there was a material and genuine dispute about whether it was necessary for H.L.S. to declare bankruptcy. The superior court seemingly concluded that it was necessary for H.L.S. to declare bankruptcy, but even if it were appropriate to sell H.L.S.'s real property to care for him, that would not mean that CAPA could provide that care more efficiently or less expensively than H.C.S.
Finally, there is no indication the court considered the relative closeness of H.L.S.'s relationships with CAPA and his son in making its best interests finding.[30]
We therefore remand for further findings consistent with this opinion.
Because only H.C.S. has filed a brief on appeal and the parties did not seem to discuss in the superior court what factors might be relevant in deciding whether H.C.S. should replace CAPA, we decline to attempt to list all considerations that may be relevant on remand. Also, circumstances may have changed since this appeal was filed. But we do note one factor that is potentially relevant: the ward's need for continuity and stability. That factor may bear on who is best qualified to be guardian and whether there is "good cause" to have a conservator who is of lower priority than H.C.S. H.L.S. may have formed relationships with persons providing care to him or with whom he has come into contact in his present living arrangement. The record indicates his most recent placement was in the Sitka Pioneer Home. It may have changed since.
H.C.S. satisfied his burden of demonstrating materially changed circumstances. But who bears the burden regarding the ward's best interests on remand? A motion to modify a child custody order again provides an apt model. We conclude that a party asking the court to modify an order appointing a guardian or conservator normally has the burden of demonstrating that the ward's best interests justify the modification.[31] Because there was no contest between *1102 CAPA and any other applicant when CAPA was appointed, the superior court made no "best qualified" or "good cause" findings bearing on the selection and justifying deviation from the statutory priorities. It could therefore be argued that CAPA should have the burden of demonstrating that the ward's best interests justify CAPA's retention. But the present dispute concerns removal of a guardian and conservator previously appointed, and we think placing the burden on the party seeking to maintain the status quo would unduly promote instability and encourage removal motions by persons with higher statutory priority. Placing the burden on movants will not prevent modification when it is in the ward's best interest. And if all other things are equal, it would seem that a movant like H.C.S., whose relationship to his father is much closer than CAPA's, can readily establish that modification is in the ward's best interests.

IV. CONCLUSION
For these reasons, we REVERSE the denial of H.C.S.'s petition and REMAND for further proceedings consistent with this opinion.
NOTES
[1] E.g., In re Estate of Romberg, 942 S.W.2d 417, 419 (Mo.App.1997); see also 39 AM.JUR.2D Guardian and Ward § 40 (1999) ("[T]he selection of a guardian is a matter committed largely to the discretion of the appointing court, whose decision will only be interfered with on appeal in the case of a clear abuse of discretion." (citations omitted)); cf. Veazey v. Veazey, 560 P.2d 382, 385 (Alaska 1977) (holding that trial court has discretion to appoint guardian ad litem), overruled on other grounds by Deivert v. Oseira, 628 P.2d 575, 579 (Alaska 1981).
[2] 39 AM.JUR.2D Guardian and Ward § 40.
[3] See S.N.E. v. R.L.B., 699 P.2d 875, 878 (Alaska 1985) (reviewing modification of child custody order under abuse of discretion standard).
[4] Id. (citation omitted).
[5] Sosa v. State, 4 P.3d 951, 953 (Alaska 2000) (citations omitted).
[6] AS 13.26.145(e).
[7] AS 13.26.210(b).
[8] Alaska Probate Rule 16(a) provides:

A petition for guardianship must contain the information required by AS 13.26.105(b). The petition must be verified by the petitioner or signed by an attorney representing the petitioner. The petition must state the priority of the nominee under AS 13.26.145 and, if known, the names and addresses of any person with a higher priority.
[9] Alaska Probate Rule 17(a) provides:

A petition for conservatorship must contain the information required by AS 13.26.180(b). The petition must be verified by the petitioner or signed by an attorney representing the petitioner. A petition for conservatorship of a minor must state who has legal custody of the minor and the birthdate of the minor. The petition must state the priority of the nominee under AS 13.26.210 and, if known, the names and addresses of any person with a higher priority.
[10] See AS 13.26.145(e).
[11] See AS 13.45.210(b).
[12] AS 13.26.125 (addressing removal of guardian); AS 13.26.235 (addressing removal of conservators). H.C.S. has not discussed either of these statutes on appeal. Nor does it appear that he discussed them in the superior court. His petition for modification cited AS 13.26.125 without discussing its substance.
[13] The Alaska Probate Rules do not specify the procedure for a removal petition.
[14] AS 13.26.125 provides:

Removal or resignation of guardian; change in or termination of guardianship.
(a) On petition of the ward, the guardian, or any person interested in the ward's welfare, the court may (1) review and amend a decision of a guardian; or (2) if alternatives that are less restrictive than guardianship or less restrictive than the existing guardianship plan would assist the ward in meeting essential requirements for physical health and safety, modify the provisions of its order to (A) amend the guardianship plan or the responsibilities of the guardian; (B) remove a guardian and appoint a successor; or (C) terminate the guardianship. On petition of the guardian, the court may accept a resignation and make any other order that may be appropriate.
(b) The ward, the guardian, or any person interested in the ward's welfare may petition for an order that the ward is no longer incapacitated or no longer incapacitated to the same extent as the ward was when the original guardianship order was made or when the court last amended the guardianship order, and for removal or resignation of the guardian, termination of the guardianship, or a change in the responsibilities of the guardian. A request for this order may be made by informal letter to the court or judge and any person who knowingly interferes with transmission of this kind of request to the court or judge may be held in contempt of court.
(c) Before removing a guardian, changing the guardian's responsibilities, accepting the resignation of a guardian, or ordering that a ward's guardianship be changed or terminated, the court, following the same procedures to safeguard the rights of the ward as apply to a petition for appointment of a guardian and applying the least restrictive alternative necessary to meet the needs of the ward after consideration of alternatives to guardianship services, may send a visitor to the residence of the present guardian and to the place where the ward resides or is detained, to observe conditions and report in writing to the court.
(d) If at any time the ward requests or indicates to the guardian or to the agency responsible for the ward's care or its employee that the ward desires a change in guardianship, the guardian or the agency providing care shall inform the court of the request or indication.
(e) If the guardian dies, or if on the basis of a petition filed under this section or a report or other information, there is probable cause to believe a guardian is not performing the guardian's responsibilities effectively and there is an imminent danger that the physical health or safety of the ward will be seriously impaired, the court shall take whatever action is necessary to protect the ward, including the dismissal of the guardian and appointment of a temporary guardian without a hearing.
[15] H.C.S. does rely on a preference expressed by his father, but his father expressed that preference before CAPA was appointed.
[16] AS 13.26.235 provides: "The court may remove a conservator for good cause, upon notice and hearing, or accept the resignation of a conservator. After death, resignation, or removal, the court may appoint another conservator. A conservator so appointed succeeds to the title and powers of the conservator's predecessor."
[17] See Alaska R. Prob. P. 16, 17.
[18] AS 25.24.150(c).
[19] AS 13.26.090.
[20] AS 13.26.165.
[21] Garding v. Garding, 767 P.2d 183, 185 (Alaska 1989) (citing S.N.E. v. R.L.B., 699 P.2d 875, 878 (Alaska 1985)).
[22] Nichols v. Mandelin, 790 P.2d 1367, 1372 (Alaska 1990) (quoting King v. King, 477 P.2d 356, 360 (Alaska 1970)).
[23] Our survey of statutes elsewhere regarding removal or modification of guardians reveals one jurisdiction that requires a change in circumstances before removal. Ga.Code Ann. § 29-5-9(2) (allowing modification or termination of guardianship upon showing of significant change in circumstances of ward or guardian); In re Pitts, 219 Ga.App. 15, 463 S.E.2d 550, 550-51 (1995) (affirming dismissal of petition to remove guardian where petitioner's "factual recitation [did] not evidence a significant change in the extent of her mother's incapacity or her circumstances since the appointment of her guardian").
[24] See AS 13.26.145(d) (guardians); AS 13.26.210(a) (conservators); see also supra Part III.B. (identifying equivalent preferences under each statute).
[25] See, e.g., AS 25.24.150(c)(5) (requiring consideration of "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").
[26] See Acevedo v. Liberty, 956 P.2d 455, 458 (Alaska 1998) (custodial parent's in-state move of considerable distance constituted change in circumstances sufficient to warrant hearing on modification of custody order).
[27] H.C.S. is three categories above CAPA on the guardian appointment priority list. AS 13.26.145(d). H.C.S. is also three categories above CAPA on the conservator list if CAPA is considered "(7) a person nominated by the person who is caring for ... the protected person." AS 13.26.210(a).
[28] The superior court had previously denied Ms. H.S.'s October 1999 pro se petition on "best interests" grounds, finding that CAPA was doing "an excellent job dealing with a very difficult situation." In so ruling, the court did not refer to the statutory priorities or the statutory grounds for deviating from them.
[29] H.C.S. does not argue that the hearing was procedurally inadequate.
[30] See supra note 24 and accompanying text.
[31] Petitioners seeking modification of child custody orders bear the burdens of proof and persuasion both as to changed circumstances and best interests. E.g., Lee v. Cox, 790 P.2d 1359, 1361 (Alaska 1990) (stating that burden is on non-custodial parent to demonstrate that "the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the custody decree"). This is also true where the initial custody award was entered by stipulation rather than by contest. E.g., Garding, 767 P.2d at 185 (holding that non-custodial parent still had burden of proving changed circumstances where parents stipulated to initial custody agreement); Lashbrook v. Lashbrook, 957 P.2d 326, 329 (Alaska 1998) (holding that movant still had burden of proving modification was in child's best interests where parties stipulated to initial custody agreement). By analogy, H.C.S. should bear both burdens on remand even though CAPA's initial appointments were not contested.