*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Protective Proceedings of | ) ) ) Supreme Court No. S-18920 |
| MACON J. (Minor). | ) Superior Court No. 1KE-22-00171 PR ) ) O P I N I O N ) ) No. 7753 – March 14, 2025 ) ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Daniel Doty, Judge.

Appearances: Chris Peloso, The Law Offices of Chris Peloso, Juneau, for Appellant. Robert Kutchin, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Vance A. Sanders, Sanders Poulson Woodford, LLC, Juneau, for Guardian.

Before: Maassen, Chief Justice, and Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

MAASSEN, Chief Justice.

## I. INTRODUCTION

The foster parent of a child adjudicated in need of aid petitioned for guardianship of the child, and the child's father opposed the petition. Following an evidentiary hearing, the superior court granted the petition, appointing the foster parent as the child's guardian. The father appealed.

On the parties' joint motion, we remanded the case to the superior court with instructions that it "(1) hear the guardianship petition as part of the [Child in Need of Aid (CINA)] matter and (2) make all factual findings required by [the Indian Child Welfare Act (ICWA)]," specifically whether the Office of Children's Services (OCS) had made active efforts to prevent the breakup of the family.

On remand the superior court made additional findings on the existing record and reaffirmed its order appointing the guardian. The father again appeals. He argues that the appointment of a guardian is a de facto termination of parental rights and therefore requires findings and procedural steps that the superior court proceedings on remand lacked. We conclude, however, that the superior court did not clearly err or abuse its discretion in its proceedings on remand, and we therefore affirm its order appointing the guardian.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kaleb J. is the father of Macon J., born in 2010.[1] Macon is a member of his mother's tribe; Kaleb is not a tribal member. During early childhood Macon lived with his mother, who is not involved in this appeal. Kaleb testified that he co-parented until the child was about six, but at some point thereafter he left Alaska and did not return to Ketchikan until 2022.

OCS took custody of Macon in 2019, when he was eight years old, initiating a CINA proceeding because of reports of domestic violence and drug abuse in Macon's mother's home. Kaleb was living in Phoenix, Arizona at the time. He alleges that OCS failed to contact him when the CINA case began, and he therefore did not get involved until eight months to a year after OCS took custody of Macon.

---

[1]     We use pseudonyms to protect the parties' privacy.

Once OCS had made contact with Kaleb, it attempted to place Macon with him in Arizona. It began the process outlined in the Interstate Compact on the Placement of Children (ICPC),[2] which in this case meant having Arizona conduct a home study. Once the study was complete, Arizona recommended against placing Macon with Kaleb. Consequently, OCS facilitated contact and visitation instead (though Kaleb disputes the extent of these efforts).

Macon was placed with Kara S. in 2020. Kara is Macon's mother's first cousin, a tribal member, and the guardian of Macon's half-siblings.

## B. Proceedings

In November 2022 Kara petitioned for appointment as Macon's guardian. By that time Macon had been in OCS custody for 44 months and in Kara's care for about two years.

Kaleb moved to dismiss the petition, arguing that "this guardianship matter should be dismissed as a separate proceeding and consolidated with the related CINA matter" because "the appointment of a guardian would effectively circumvent the requirements for termination of parental rights in the CINA proceeding." The superior court — the same judge presiding over both the guardianship and ongoing CINA cases — denied Kaleb's motion. It concluded that guardianship proceedings do not require or result in the termination of parental rights and can proceed independently of a CINA proceeding.

The guardianship hearing took place over three days in February and March 2023. Five witnesses testified: Kara, the proposed guardian; the assigned OCS caseworker; an expert in child welfare and ICWA; a tribal cultural expert; and Kaleb. Following the hearing, the court granted the petition appointing Kara as Macon's

---

[2]     *See* AS 47.70.010 (describing agreement among "party states to cooperate with each other in the interstate placement of children" to help ensure safety and suitability of out-of-state placements).

guardian. It found that guardianship was in Macon's best interests and, as required by ICWA, that there was clear and convincing evidence that returning Macon to his parents' care was likely to result in "serious emotional damage."[3]

Kaleb appealed the guardianship appointment order to this court. Before briefing, the parties jointly moved for a remand to the superior court to address what they agreed were errors: (1) "the guardianship matter was not heard, in all respects, 'as part of' the pending CINA matter even though they involved the same child"; and (2) "the guardianship order [did] not address certain factual findings required by ICWA." We granted the joint motion, remanding to the superior court with instructions to "(1) hear the guardianship petition as part of the CINA matter and (2) make all factual findings required by ICWA," specifically whether OCS had made active efforts to prevent the breakup of the family.[4]

The superior court invited the parties to brief "what actions if any should be taken now that this case has been remanded." OCS moved to formally consolidate the CINA and guardianship cases to resolve the first alleged error. It also suggested that the court should reopen the record and set another hearing to address OCS's active efforts. Kaleb argued that the court had to first "find that all of the requirements for a termination of parental rights under ICWA and CINA statutes have been met *before* considering whether to grant a guardianship." (Emphasis in original.)

The superior court agreed that its initial guardianship order was deficient because it lacked active efforts findings, but it disagreed with the parties' suggestions about how to proceed. The court explained that while "[t]he manner in which the Court consolidated the two cases may not have been best practice," the CINA and guardianship proceedings were "adequately consolidated in all material respects." It

---

[3] 25 U.S.C. § 1912(e).

[4] *See id.* § 1912(d).

found that its failure to explicitly state that it considered the cases together did not prejudice any of the parties. It further explained that reopening the proceedings and taking new evidence "would only be necessary if the Court had prevented any party from presenting evidence on that point at the contested hearing," which it had not. Therefore, rather than reopening the record, it held that each party was entitled to present a closing argument on active efforts based on the evidence already admitted.

Following closing arguments, the court reaffirmed Kara's appointment as Macon's guardian. It reiterated its previous findings on best interests and the likelihood of serious emotional or physical damage to Macon if he was returned to his parents' care, and it found in addition that OCS had satisfied the active efforts requirement at the time the original appointment was made. Kaleb appeals.

## III.  STANDARD OF REVIEW

"In child in need of aid cases, we review the trial court's factual findings for clear error and its legal determinations de novo."[5] Clear error exists "only when a review of the entire record leaves us with a definite and firm conviction that the superior court has made a mistake."[6] "Conflicting evidence is generally not sufficient to overturn a trial court's factual findings, and we will not reweigh evidence when the record provides clear support for a trial court's ruling."[7]

---

[5] *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 550 (Alaska 2017) (internal quotation marks omitted) (quoting *Emma D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 322 P.3d 842, 849 (Alaska 2014)).

[6] *Id.* (internal quotation marks omitted) (quoting *David S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 270 P.3d 767, 774 (Alaska 2012)).

[7] *Emma D.*, 322 P.3d at 849 (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs. Off. of Child.'s Servs.*, 309 P.3d 850, 855 (Alaska 2013)).

"Whether a trial court's findings are consistent with the child in need of aid or other applicable statutes is a question of law that we review de novo."[8] Statutory interpretation, including the meaning of statutory terms, also presents questions of law "for which we adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

Whether OCS complied with ICWA's active efforts requirement "is a mixed question of law and fact."[10] We "review for abuse of discretion the superior court's determination that guardianship is in the child's best interests, though we review any underlying findings of fact for clear error."[11] A superior court abuses its discretion in appointing a guardian "if it considers improper factors, fails to consider statutorily mandated factors, or assigns too much weight to some factors."[12]

## IV.  DISCUSSION

Alaska Statute 13.26.132 authorizes the court to "appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." When OCS takes custody of a child in need of aid, the parent's rights of custody are suspended, and the court is thus authorized to establish a guardianship pursuant to the statute.[13]

---

[8]     *Jude M.*, 394 P.3d at 550 (internal quotation marks omitted) (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

[9]     *Id.* (internal quotation marks omitted) (quoting *Tessa M.*, 182 P.3d at 1114).

[10]     *Id.* (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[11]     *Id.* (citing *In re M.K.*, 278 P.3d 876, 880-81 (Alaska 2012)).

[12]     *Id.* (quoting *In re M.K.*, 278 P.3d at 881).

[13]     *Id.* at 551-52.

Minor guardianships under AS 13.26.132 are probate proceedings.[14] But guardianship appointments are also authorized by the CINA statutes, specifically AS 47.10.110.[15] When someone petitions for the guardianship of a child who is also the subject of an ongoing CINA proceeding, as Macon was here, "any attempts to appoint a guardian — whether filed pursuant to AS 47.10.110 or AS 13.26.[101–.186] — must be considered and treated, in all respects, as part of the original CINA case."[16]

ICWA also applies to guardianship proceedings involving Indian children. ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."[17] Certain findings are required before an Indian child may be placed in foster care.[18] The Bureau of Indian Affairs has confirmed that ICWA "applies to placements with a guardian or conservator, because ICWA

---

[14]    *See* AS 13.26.132, .147.

[15]    The statute provides:  "When, in the course of a proceeding under this chapter, it appears to the court that the welfare of a minor will be promoted by the appointment of a guardian or custodian of the minor's person, the court may make the appointment." *See also Terry S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 168 P.3d 489, 492 & n.2 (Alaska 2007) (citing AS 47.10.110).

[16]    *Terry S.*, 168 P.3d at 495; AS 47.10.111(a) ("[I]f a person seeks adoption or appointment as legal guardian of a child in state custody under this chapter, the court shall hear the adoption or guardianship proceedings as part of the child-in-need-of-aid proceedings relating to the child.").

[17]    25 U.S.C. § 1902.  ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.* § 1903(4).

[18]    *Id.* § 1912(d)-(e).

includes guardianships in the definition of 'foster care placement.' "[19] Accordingly, Alaska's Probate Rules governing minor guardianships provide that "[i]n all cases involving an Indian child, the statutory provisions of 25 U.S.C. 1901 et seq., and the ICWA regulations . . . shall apply."[20] Because Macon is a tribal member, ICWA applies to this guardianship proceeding; the parties do not dispute its applicability.

## A. The Superior Court Made The Factual Findings Necessary To The Appointment Of A Guardian For An Indian Child.

The superior court may appoint a guardian if all parental rights of custody have been terminated or suspended.[21] To support the appointment, ICWA additionally requires the superior court to find: (1) that all parental rights of custody have been terminated or suspended; (2) "by clear and convincing evidence that 'active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful' ";[22] (3) "by clear and convincing evidence, supported by expert testimony, that 'custody of the child by the parent or Indian custodian is likely to result in serious emotional or

---

[19] OFF. OF THE ASSISTANT SEC'Y — INDIAN AFFS., U.S. DEP'T OF THE INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 14 (2016), https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf.; *see also* 25 U.S.C. § 1903(1)(i) (" '[C]hild custody proceeding' shall mean and include — (i) 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.").

[20] Alaska R. Prob. P. 15(f).

[21] AS 13.26.132.

[22] *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 554 (Alaska 2017) (first quoting 25 U.S.C. § 1912(d); and then citing CINA Rule 18(c)(2)(B) (establishing a clear and convincing standard for active efforts in termination proceedings)).

physical damage to the child' ";[23] and (4) "by a preponderance of the evidence that the appointment of a guardian is in the child's best interests."[24]

Kaleb argues that the last three of these necessary findings are identical to those required under AS 47.10.088 for the termination of parental rights in a CINA proceeding. From this premise he argues that because the appointment of a guardian is the functional equivalent of a termination of parental rights, ICWA requires the court in a guardianship proceeding to find that the likelihood of harm to the child is proven beyond a reasonable doubt, the higher evidentiary standard that applies in termination proceedings.[25]

But this argument is simply mistaken. As noted above, a guardianship proceeding is a "foster care placement" under ICWA,[26] and ICWA applies a "clear and convincing evidence" standard to foster care placements.[27] In *Jude M.* we explicitly rejected the argument Kaleb makes here: that guardianships are de facto terminations of parental rights and thus require a higher standard of proof under ICWA.[28] It is true that guardianships modify parent-child relationships, as a guardian assumes "the

---

[23]    *Id.* (quoting 25 U.S.C. § 1912(e)).

[24]    *Id.*

[25]    25 U.S.C. § 1912(f).

[26]    U.S. DEP'T OF THE INTERIOR, *supra* note 19, at 14; *see also Jude M.*, 394 P.3d at 553 ("Because guardianship is a foster care placement under ICWA, the superior court was required to support the guardianship order 'by clear and convincing evidence that [the father]'s continued custody of his children was likely to result in serious emotional or physical damage to them." (quoting *Terry S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 168 P.3d 489, 496 (Alaska 2007)).)

[27]    *Compare* 25 U.S.C. § 1912(d), (e), *with* 25 U.S.C. § 1912(f).

[28]    394 P.3d at 553 (explaining that "the fact that the guardianship modified Jude's legal rights is not enough to make it a 'termination' under federal law").

powers and responsibilities of a parent."[29]  But a parent whose rights have not been terminated retains "residual rights and responsibilities,"[30] including the right to petition for the guardian's removal.[31]  This is notably different from a termination of "the rights and responsibilities of the parent regarding the child," which "free[s] a child for adoption or other permanent placement."[32]

Kaleb also argues that the court did not make the findings ICWA requires to support a guardianship.  But he concedes that the court made findings related to the likelihood of serious physical or emotional damage.[33]  He also concedes that the court "retroactively addressed" the active efforts factor on remand.[34]  He contends, however, that the court's findings related to the "best interests" factor[35] were "pretextual," because the court "stat[ed] that a guardianship would be in [Macon's] best interest solely on the basis that he was doing well in foster care."  But Kaleb does not explain why this finding should be viewed as pretextual, and we see no clear error.

In the similar context of guardianships for incapacitated persons, we have held that the "best interests determination [requires] the court to take into account the closeness of the ward's relationships to the existing and prospective guardians and

---

[29]     *Id.*; AS 47.10.084(a); AS 13.26.167.

[30]     AS 47.10.084(c).

[31]     AS 13.26.186.

[32]     AS 47.10.088(a).

[33]     *See* 25 U.S.C. § 1912(e).

[34]     *See id.* § 1912(d).

[35]     *See Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 554 n.55 (Alaska 2017).

conservators."[36] And "if a change would likely affect the ward's physical placement," also relevant would be "the extent to which the ward has formed relationships with caregivers or others in the ward's present living arrangement."[37]

The court's findings here reflect similar considerations. In its initial appointment order the court found that Macon had "been living with [Kara] for a long time. They have a strong bond, and he is thriving in her care." It reiterated this finding in its order on remand, adding that Macon had "lived with [Kara] for two years before she was appointed as guardian" and that "[h]e was doing well in her care and had gotten close to her and her children." These findings are sufficiently detailed for purposes of our review[38] and well supported by the hearing testimony; Kaleb does not appear to challenge their accuracy. We conclude that the court made the factual findings necessary to support its decision to grant the guardianship petition.

### B. In Considering The Guardianship Petition, The Superior Court Was Not Required To Consider All The Evidence In The Ongoing CINA Proceeding.

Alaska Statute 47.10.111(a) requires that guardianship proceedings for a child in OCS custody be heard "as part of the child-in-need-of-aid proceedings relating to the child." "The legislature enacted this statute in order to require a 'one judge, one child, one family' approach to children's cases mandating that all the hearings would

---

[36]     *In re M.K.*, 278 P.3d 876, 884 (Alaska 2012) (quoting *H.C.S. v. Cmty. Advoc. Project of Alaska, Inc. ex rel. H.L.S.*, 42 P.3d 1093, 1099 (Alaska 2002)) (considering best interests of incapacitated person when evaluating petition for appointment of guardian).

[37]     *Id.* (quoting *H.C.S.*, 42 P.3d at 1100).

[38]     *See id.* at 885 ("We have held that the superior court's 'findings need not be extensive, but must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved.' " (quoting *Bird v. Starkey*, 914 P.2d 1246, 1249 n.4 (Alaska 1996))).

be held before the judge assigned to the CINA case."[39]  But what does it mean for a guardianship proceeding to be heard "as part of" the child's CINA proceedings? According to Kaleb, it means that all the evidence from the CINA proceeding must be considered in the guardianship proceeding as well.  We disagree.

Because of the sensitive subject matter, only necessary parties are involved in a CINA case:  "the child, the parents, the guardian, the guardian ad litem, the Department, an Indian custodian who has intervened, an Indian child's tribe which has intervened, and any other person who has been allowed to intervene by the court."[40] By contrast, "any adult" may seek guardianship of a minor; although an appointed guardian is a party to a CINA case, a guardianship petition does not elevate the *petitioner* to party status in the CINA case.[41]

A guardianship proceeding thus exists within, but slightly apart from, an ongoing CINA case involving the same child.  The single court overseeing both, under the "one judge, one child, one family" policy, must recognize that the outcome of each proceeding affects the other,[42] but the proceedings nonetheless remain distinct and do not have to be formally consolidated.  Guardianship proceedings are not necessary to

---

**39**    *Tara R. v. State. Dep't of Fam. & Cmty. Servs., Off. of Child.'s Servs.*, 541 P.3d 530, 541 (Alaska 2024).

**40**    CINA Rule 2(*l*).

**41**    AS 13.26.143; AS 47.10.111(d) (providing that petitioners for guardianship "may only participate in proceedings under this chapter that concern the person's petition").

**42**    Guardianship may be part of a court-approved permanency plan for a child in OCS custody; a court will not consider a petition for guardianship of a child in OCS custody until after such a plan is approved.  *See* AS 47.10.111(b).  Once a court appoints a guardian, that "guardianship status continues until terminated," AS 13.26.101, and it is the guardian, not OCS, who has legal custody of the child.  AS 47.10.084(a) ("When a child is . . . released under AS 47.10.080(c)(2) to the child's . . . guardian . . . a relationship of legal custody exists.").

every CINA case, and they may result in the appointment of someone who is not a party to the CINA case.

We agree with the trial court's self-assessment on remand that "[t]he manner in which [it] consolidated the two cases may not have been best practice, but the CINA and probate proceedings were adequately consolidated in all material respects." The record supports this view. Kara timely filed for appointment as Macon's guardian in November 2022 after the permanency plan in the CINA case listed guardianship as a goal. At the next CINA permanency hearing, held before a magistrate judge, OCS asked the court to consider "the permanency and extension [of custody] and the guardianship all together [in one proceeding] because the evidence is the same. If the guardianship is granted, it makes the other issues moot as well." Kaleb's attorney agreed to proceeding in this way, as did the other parties to the CINA case. The magistrate judge said she would calendar further CINA proceedings and the guardianship "for [the] same time in front of [the same judge]." At that subsequent hearing, accordingly, the superior court took evidence on the guardianship petition and implicitly accepted Kara's position that because guardianship was a permanency goal, no further permanency proceedings would be necessary if the guardianship petition was granted.

Because a guardianship proceeding is not formally consolidated with the associated CINA case, the records of the two cases do not automatically merge. And there is no requirement that the guardianship findings required by AS 13.26.147 and ICWA be supported by the evidence adduced in the CINA case.[43] Such evidence may

---

[43]    *See Amy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 440 P.3d 273, 280 (Alaska 2019) (holding that in requiring requests to modify custody of or visitation with minor child in OCS custody to be heard "as part of" that child's CINA proceeding, "[t]here is no indication that the legislature intended to reduce or change applicable burdens of proof . . . or to change the types of evidence that courts must consider").

well be relevant to the guardianship petition, but it still needs to be formally introduced in the guardianship proceeding before the judge may consider it.[44] Kaleb is a party to the CINA case and has access to the evidence adduced there. He attended the guardianship proceeding, was represented by counsel, testified, and elicited testimony from others, some of it about the CINA proceeding. He had the opportunity during three days of hearing to present evidence that had been earlier adduced in the CINA case if he thought it was relevant. But he never attempted to do so, and even on appeal he does not identify any evidence from the CINA case that would have made a difference to the superior court's decision to grant the guardianship petition.[45]

---

[44]    *See Diego K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 411 P.3d 622, 628 (Alaska 2018) ("[W]hen the focus of [a CINA status] hearing shifts to matters requiring the court to make specific factual findings and legal conclusions — such as whether probable cause exists to award temporary custody of a child to OCS, whether reasonable or active efforts were made, or any of the other specific findings required by state and federal law — then the court's decision must be based only upon evidence admitted pursuant to legal rules.").

[45]    *Cf. Snider v. Snider*, 357 P.3d 1180, 1186-87 (Alaska 2015) (holding that it was an abuse of discretion to deny request to reopen evidence, as proffered evidence "could make a difference to the superior court's decision"); *A.C.E. Constr., Inc. v. Chena Constr. Corp.*, 647 P.2d 602, 604 (Alaska 1982) (reversing superior court's denial of motion to reopen evidence because proffered evidence would have decisively resolved one of the main questions on appeal).

In his opening brief on appeal, Kaleb cites the superior court's failure to "permit[] the parties to present evidence from the CINA matter in the evidentiary hearing held as part of the guardianship matter." But he does not identify any specific evidence or cite to any point in the record where he attempted to present it and was denied the opportunity. In declining to reopen the record on remand, the superior court observed that such a step "would only be necessary if the Court had prevented any party from presenting evidence on [active efforts] at the contested hearing," but it "never prohibited a party the opportunity to do so." Kaleb points to nothing in the record that would contradict the court's statement.

In sum, we see no error or abuse of discretion in the superior court's consideration of the guardianship petition as a separate proceeding with its own evidentiary record.

### C. Parental Rights Do Not Have To Be Terminated Before A Guardian Is Appointed.

Kaleb's arguments are largely premised on his assumption that the appointment of a guardian for a child in OCS custody operates as a de facto termination of parental rights, meaning that all the protections attendant upon a termination are necessary. He asks us to clarify that following *Jude M.*, "the issue of guardianship can only be taken up *after* the court takes sufficient evidence to make findings in a parental termination trial." (Emphasis in original.)

Kaleb misreads *Jude M.* The guardian in *Jude M.* was appointed after two termination trials, and the superior court evaluated OCS's alternative petition for guardianship only once the petition to terminate parental rights had been denied.[46] But termination trials are not a threshold requirement for guardianship proceedings.[47] While termination of parental rights does authorize the court to establish a guardianship under AS 13.26.045, so too does suspension of those rights.[48] In *Jude M.* we held that because adjudication of a child in need of aid suspends custodial rights, the court may

---

[46] *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 549-50 (Alaska 2017).

[47] *Cf. Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 762-63 (Alaska 2019) (holding that although guardianship may be considered as alternative to termination of parental rights, trial court is not required to consider whether guardianship is in child's best interests before terminating parental rights).

[48] AS 13.26.132 ("The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order.").

then appoint a guardian regardless of whether there has been an attempted termination of parental rights.[49]

Kaleb further argues that our opinion in *In re Baron W.*,[50] which established the standard for removing a minor's guardian, makes all minor guardianships de facto terminations of parental rights. He argues that as long as the guardian provides adequate care, it would be impossible for a parent in a CINA case to carry the burden of proving that the guardian's removal is warranted. This interpretation overstates our holding in *Baron W.*

In *Baron W.* we held that that "[t]o remove the guardian of a minor, a petitioner must first show that the circumstances of the ward or guardian have changed materially since the guardian was appointed, and the court must then determine [whether] the existing appointment is in the ward's best interests."[51] Kaleb reads this to mean that only material changes in the guardian/ward relationship will justify the guardian's removal — not material changes in the parent's life, such as rectifying the conditions that made the child a child in need of aid.

---

[49]    394 P.3d at 551-52.

[50]    498 P.3d 1045 (Alaska 2021).

[51]    *Id.* at 1053 (interpreting AS 13.26.186, statute governing removal of a guardian of a minor). This is the same standard used to remove guardians of incapacitated persons, which was itself adopted from the standard for modifying child custody awards. *Id.* at 1052; *H.C.S. v. Cmty. Advoc. Project of Alaska, Inc. ex rel. H.L.S.*, 42 P.3d 1093, 1099-1100 (Alaska 2002). The bracketed alteration in *Baron*'s text ("whether" instead of "that") follows *H.C.S.*'s statement of the second step in the analysis: "Once the petitioner demonstrates changed circumstances, the court must decide whether the existing appointment is in the ward's best interests." *H.C.S.*, 42 P.3d at 1099.

Whether circumstances have materially changed is a fact-specific determination.[52] In the similar contexts of child custody modification and removal of guardians for incapacitated persons, we have held that changes in a parent's ability to provide care for a child can constitute materially changed circumstances,[53] as long as the change is long-term and significant.[54] A change in a parent's ability to care for a child may mean a change to the child's circumstances as well due to the renewed

---

[52] While we have not yet interpreted this requirement in the context of guardianship for minors, we have interpreted it in cases considering the removal of guardians for incapacitated persons or modification of custody awards. In *Baron W.*, we adopted the standard for removal of guardians of minors directly from these cases, and interpretation of changed circumstances in those contexts is therefore instructive here. *Baron W.*, 498 P.3d at 1052-53; *see, e.g.*, *In re Tiffany O.*, 467 P.3d 1076, 1080-81 (Alaska 2020) (affirming finding of changed circumstances for removal of guardian of incapacitated person where guardian's beliefs and behavior interfered with ward's needs being met); *Abby D. v. Sue Y.*, 378 P.3d 388, 394-98 (Alaska 2016) (holding that mother's mental health assessment, four months of sobriety, new spouse, and new job were short-term changes that did not constitute materially changed circumstances for purposes of custody modification).

[53] *Cf., e.g.*, *Fredrickson v. Hackett*, 407 P.3d 480, 484 (Alaska 2017) ("[The father's] circumstance — his ability to provide living conditions suitable for children — substantially changed when [the father's] previous tenant left and [he] moved into his cabin and enlarged it to provide suitable housing for the children."); *Nichols v. Mandelin*, 790 P.2d 1367, 1372 (Alaska 1990) ("There is evidence in the record regarding [the mother's] overall maturation, her changed marital status, her full time employment since 1982, and her sustained control of a former drinking problem. We hold that in the aggregate, these factors constitute a substantial change in circumstances." (footnotes omitted)).

[54] *See, e.g.*, *Abby D.*, 378 P.3d at 394-98 (holding that short-term changes in mother's life did not show substantial change necessary to modify custody); *Gratrix v. Gratrix*, 652 P.2d 76, 83 (Alaska 1982) ("[M]ere improvement in the position of one of the parties is not sufficient to justify a change in custody. [The father's] recent remarriage and abstention from drinking were not proper grounds upon which to base a change of custody, especially given the short duration of this improved lifestyle." (citation omitted)).

possibility of family reunification. *Baron W.* does not prevent a parent from making that argument successfully.

The superior court did not err by appointing a guardian even though parental rights had not been terminated, and the appointment did not act as a de facto termination of Kaleb's parental rights.

## V.    CONCLUSION

We AFFIRM the superior court's order appointing Kara as Macon's guardian.